Argument not to exceed 15 digits of a size is the reason we make this video. Good morning. Good morning. May it please the court. Kevin Lamb for Appellant Yaqub Thomas. I'd like to reserve four minutes for rebuttal. You may. The Due Process Clause does not permit states to define inherently distinct offenses as alternative means of the same crime. Kentucky's definition of murder does precisely that. It authorized the jury in this case to convict Mr. Thomas of murder even if half of the jurors believed that he had the specific intent to kill while the other half believed that he lacked intent but acted wantonly and with extreme indifference to human life. That combination brings together crimes that are logically and historically distinct and it prevents the jury from deliberating as a body to find the facts that are necessary to justify punishment. All of the rationales that supported the combination of premeditated murder and felony murder that was narrowly upheld by the Supreme Court in Shad v. Arizona compelled the opposite result here. That is why it was ineffective assistance of appellate counsel not to raise the issue in Mr. Thomas' direct appeal and that's why the claim is properly before this court. As a logical matter, under Kentucky law, intentional murder and wanton murder correspond to distinct fact patterns that cannot coexist in the same crime. Intentional murder requires specific intent to kill. Kentucky has defined wanton murder as inherently unintentional. That's why in McInnes, the Kentucky Supreme Court reversed verdicts of wanton murder where there was only evidence of intentional murder. That's why that same court in Hall said there can be no such thing as attempted wanton murder because it is logically impossible to attempt, that is, to intend, an unintended result. Well, I mean, that may be true but it's not clear to me why it's constitutionally impermissible for Kentucky to conclude that intent to murder is equally culpable as extreme indifference to the specific possibility of taking human life. I mean, we could have debates about that but as a constitutional matter, I don't think equating those two things is constitutionally impermissible. You can tell me if you disagree but why is that impermissible? Why can't Kentucky make that moral judgment? So the constitutional objection here is not that Kentucky has created this in-between category called wanton murder which it assigns the same penalty as intentional murder. The constitutional objection under Shad is that rather than treating those as two separate pathways, one of which the jury has to decide on, the Kentucky Supreme Court has construed these as alternative means of the same crime. Even though logically if the jury found both, those two findings could not stand and they do not stand when those same mental state findings are made under separate verdicts. I mean, it almost seems like a fortuity that you couldn't have both of those statements of mind at the same time. It doesn't seem to have any moral significance necessarily that you can't intend to kill somebody and be totally indifferent as to whether you kill somebody at the same time. But I mean, just why does that, the fact that you can't have them both at the same time, why does that matter for purposes of the Due Process Clause? Well, respectfully, Your Honor, I think all homicides involve some indifference to human life. But the question that is asked to a jury when it's deciding wanton murder is a different question. That aggravator, extreme indifference to human life, exists for the jury to find that this unintentional homicide was different than manslaughter and should be treated as murder. That's a relative culpability finding that the jury is required to make under wanton murder. That's why this Court, when it considered Terry v. Potter and Terry v. Pierce, was faced with a wanton murder conviction, concluded that under the Double Jeopardy Clause that implied an acquittal of intentional murder. It meant that if the jury had decided on wanton murder, it had already decided that the person lacked the intent to commit the crime. There was a reasonable doubt as to intent. That's the only time when the jury is required to consider the extreme indifference to human life. If they're deciding intent and they find beyond a reasonable doubt that there was intent, that's sufficient for the culpability of murder. They don't need to be considering a separate element. That element only exists in the context. I guess, I don't know, I mean, why isn't it two different means of satisfying an element of bad intent? I mean, some higher level of generality. Well, the other point that we have made, Your Honor, which I really want to emphasize before this Court, is that Kentucky, as set forth in the Elliott versus Commonwealth decision cited in our briefs, has made very clear that homicide under Kentucky law is carved up into two distinct paths with relative degrees of culpability. There are intentional homicides. There are unintentional homicides. And if you go along the path of intentional homicide, you decide a set of facts that determine whether it's intentional murder or first degree manslaughter. Because of Apprendi, each of those facts along that path is an offense element. Same is true, but for a different separate set of facts under unintentional homicide. So the jury has to decide, was this conduct merely reckless or was it wanton? If it was wanton, was there this additional aggravator of extreme indifference to human life? And so the process by which the jury reaches an outcome under either path is, in fact, going to determine offense elements. If the jury, as they can here under- You're talking about two different paths, but at least the crime is defined in this case. I mean, these two things are within one offense, so I don't understand how it's two different paths. I mean, it sounds like you're describing two different crimes as statutorily defined under Kentucky law. And in most cases, that's how they're charged. But as a matter of the state Supreme Court's interpretation of the statutes, it has allowed, as happened here, exceptions to that standard practice where they are charged together and they come under a general murder verdict. We are saying that's unconstitutional and violates the Due Process Clause because it effectively deprives the jury of finding the facts under either pathway that it has to find. And it deprives the jury of what is basically a reasonable consideration of the lesser included offenses under each of those distinct paths. I thought a common law like Blackstone, I thought Blackstone did equate the two mens reas at issue in this case. Intent to kill and not just wantonness, not just recklessness generally, but wanton as to the specific possibility or likelihood of taking human life. I thought that this case was actually similar to Shad in the sense that there's a common law basis for this equation as there was between felony murder and intentional murder. Am I mistaken? Yes, Your Honor. Let me answer this in three parts. How about Blackstone commentaries, I don't know, four Blackstone commentaries, 199, 200 is what I have. It's correct that malice was satisfied in different cases by different things, but there wasn't a statute at common law that wrote down and said, these are alternative means. What there were were cases that said, in this case, the defendant had a malignant heart or this person had a depraved heart that satisfied murder. What we know at common law, I need to be very precise about this, is that that was a type of murder that was recognized at common law. What there is no evidence of is that that was charged together with specific intent to commit murder, and that's what matters in this case. I guess what I'm saying is there is historical precedent in the common law for seeing the two mental states that are means here as equally culpable, just as that was true in Shad. That answers a different question, I think, Your Honor, which is whether in some cases a non-intentional homicide can be treated as a murder. We're not contesting that. The question here is whether it can be charged with an intentional murder and treated as though those are simply alternative means of the same crime. That is the constitutional violation here under Shad. The fact that at common law depraved heart murder existed would prove too much. It would basically say if anything was a type of murder at common law, even if it was a very distinct fact pattern that has nothing to do with the fact pattern involved in intentional murder, it can be charged together. That's no different from what Justice Scalia found extremely troubling in Shad, which is the idea of charging someone with killing X on Tuesday or Y on Thursday. If these are distinct fact patterns that logically and historically have not been combined, then under Shad there's no basis for treating them as the same offense and merely alternative means of that offense. That's the gravamen of the claim here. Okay. I think we'd also want to really emphasize the other point under the common law that was very key in upholding the combination in Shad, namely that when states were dissatisfied with the common law shortly after the founding, they enacted statutory reforms and in so doing they retained premeditated murder and felony murder as part of a unitary first degree offense. Depraved heart murder was classified under those same statutes as a second degree offense, not as a first degree offense. That too is unrefuted evidence here that the two crimes have been treated historically as different. Finally, I think it's extremely important to point out that this is an outlier practice. The due process clause exists to police outliers. That is all that we are asking for the due process clause to do in this case. Even as a matter of Kentucky's own... I think that's a bit of an overstatement. We still have federalism in this country and just because not all that many states or even any other state might have this particular definition doesn't mean it violates due process. It's not a homogenization provision for criminal law. What the due process clause says with respect to any two crimes being combined is that if they are distinct crimes, it's impermissible to combine them because of the impermissible risk that that creates that the defendant, if convicted, wasn't convicted by proof beyond a reasonable doubt of either of the two offenses. That would be the case as long as this court decides that here, these are logically and historically distinct offenses. They're both murder. I mean, one, your argument is one historically was first degree murder and the second was historically second degree murder, but they're both murders, right? That's true as a matter of the statutory practice in this country. It's not like we're having the jury have a verdict that might convict of murder and manslaughter. I mean, we're talking about degrees of murder. That's unconstitutional? That's basically your argument, I guess. That's not my argument, Your Honor, so just to make... There are the same crime. I mean, I think you've admitted that wanton murder, I mean, is murder, but it should be second degree and therefore it should be viewed as a different crime than intentional murder, but I see it just different degrees of murder is all, is your argument. I'm over my time. Can I... No, but tell me how that's a constitutional violation, that's all. So the constitutional... Let me answer in two parts. Under Apprendi, if you define two different crimes as degrees, that automatically under that bright line rule would have to be charged separately to the jury. Yes, they're part of the same overarching rubric, let's call it murder, but under Apprendi, you couldn't have a first degree murder charged with a second degree murder and the jury could just decide that half of them think it was first degree murder and half of them think it was second degree murder. That's unconstitutional. Okay. Is that... You have an Apprendi argument here then? I mean, I thought it was a due process argument. It is a due process argument and Apprendi does incorporate both the due process clause and the jury trial right, but our argument isn't from Apprendi strictly. There... We don't have that degree difference here. We do not have that degree difference. Kentucky only defines murder as murder simpliciter. The question here then is really, can you define these two types of murder as alternative means to get to the same place? Simply because you can't have the mental state at the same moment, the two different states, is that all this boils down to? No, Your Honor. I think that's one key aspect of it, but the other key and very troubling aspect of it is that under, as a matter of Kentucky state law, you have these two paths and the jury is supposed to go down one path or the other. What do you mean by these two paths? So under an... I'm trying to understand your argument. So under the path of intentional homicides, the jury has to answer a set of distinct questions. It says, we agree that there is intent here. Do we think that the intent was to kill or to injure? If we think it was... But this is Kentucky law. This isn't United States constitutional law. And the fact that Kentucky has two procedural paths, you've got to get to a U.S. constitutional argument as opposed to this violates what Kentucky procedural law normally does. Correct, Your Honor. That is the same as what this court essentially said in Terry v. Potter with respect to the implied acquittal claim. So to there, this court said, Kentucky gets to define its law the way it does. This court's concern is the constitutional implications of how Kentucky has defined its law. And what our argument is, is that the constitutional implications of this separation is that when the jury decides intent, they essentially have to answer a separate and discrete set of questions about the intent to determine the level of culpability. Isn't that true in Shad? Felony murder, that's a different finding than intent to kill. Isn't it? It's not. You could have a jumble. You know, you could have half of them thinking it's felony murder, half of them thinking this is my last question, Mr. Chief Judge. Isn't it the same jumble here that they had there? It's not the same jumble. There are plenty of reasons that obviously both Justice Scalia and the dissenters were troubled by that combination there. But Justice Scalia was willing to endorse it and let it hang on by the skin of its teeth because of the endorsement of history alone. That is not true here. And the endorsement of history makes somewhat good sense, even if there are troubling things about that combination, because felony murder never required any juror to decide the issue of intent. All that a felony murder rule, which it was often called the felony murder doctrine required, was for some jurors to say, I don't know about intent, but what I do know is he committed the murder, or he committed the murder in the course of the robbery. At that level, felony murder is a strict liability doctrine, it's a strict liability rule. It doesn't require any mental state findings. So it doesn't require the jury to say, as they have to here under wanton murder, that the defendant lacked intent, but instead had this separate and lower level of culpability called wantonness. But notwithstanding that, there was an aggravator. And the aggravator of extreme indifference to human life justifies the imposition of penalty. Kentucky has made a policy decision that wanton murder is the same culpability as intentional murder. And I mean, that seems like a state law choice, a policy choice. I just don't see a constitutional violation of that policy choice. And your honor, several states have made that high level policy choice. We're not objecting to the fact that there can be such a thing as reckless murder or wanton murder. The objection here only comes from Kentucky doing what no other state does, and taking the two subsections of the model penal code, and instead of treating those as separate offenses that the jury has to agree about, it has to say, it was either intentional murder or it was wanton murder. Six of them can believe it was one. The other can believe it was- But what about felony murder? And states do the same thing. Felony murder is equated to intentional murder. And as the Chad case said, that's all right. Right. And in that case, as I pointed out, the only reason that Justice Scalia joined the four justices in the plurality was the endorsement of history, which is lacking here. There are two very key distinctions that I've tried to emphasize that make this case very different and very troubling. One is that you have the contradiction of the mental states between the two. And more importantly, that the reasoned consideration of these distinct, lesser included offenses won't happen if the jury doesn't have to resolve the issue of intent in the first instance. Okay. Thank you. You got your money's worth for that opening session. And then some. Okay. Please, the court. The evidence here was sufficient to convict Mr. Thomas of both wanton or aggravated wanton murder and intentional murder. And that's important because somewhere down the line, the claim has morphed from what was presented to the district court and what it is now before this court. Let me explain. In Mr. Thomas' second amended complaint, his claim one, which was one of those that the COA was granted, claims one and four, he simply argued that there was an insufficient evidence to support a wanton murder charge. He made a brief reference to a combination instruction to argue that both offenses are He said, counsel didn't make a palpable error argument on direct appeal and the combination verdict created a mandatory presumption and a fatal variance, which he said caused, because the commonwealth failed to offer sufficient evidence of wantonness. So basically we have an insufficient evidence argument and this mandatory presumption argument, both of which the district court addressed. This mandatory presumption argument, Mr. Thomas had cited a Francis case where there were some burden shifting going on by the instructions. I thought we granted a certificate of appealability for the very claim that Mr. Lamb just argued. And I'm going to address that. But I just wanted to point out that I think somehow that that has changed because claims one and four are not what was described in the COA and I'm not sure that they were ever before the court on this amended petition. Mr. Thomas filed, this was his second allowed amended petition, he probably tendered seven or eight and kept amending. So I'm not sure what went on, I'm just saying that something morphed there and I just wanted to bring that to the court's attention. Now I don't think it's necessary though to get to the constitutional issue, even if the court thinks the claims are before. That's because they're procedurally defaulted. The IAAC claim in which he wanted, the shad argument would have been made, that was procedurally defaulted under De Villa v. Davis. If a lawyer fails to make the argument on direct appeal that is being presented now, and then neither does his lawyer make it under Kentucky Rule 11.42? That's correct. Is that the first collateral attack? It is the first collateral attack and it is normally where all claims have to be presented. What happened is following, he didn't raise it then, it was terminated within a couple of years later, Kentucky changed its law and said we will recognize the typical ineffective assistance of appellate counsel claims. What was the Kentucky law at the time that Thomas' counsel did not make the 11.42 argument? Could you just not make an IAC of appellate counsel argument? Was it not recognized or something? Only in the extreme case where counsel didn't file an argument at all, a brief at all. In other words, there was no such thing as ineffective assistance of appellate counsel unless the lawyer just didn't file a brief or something. That's correct. What happened after Kentucky changed its position in this, in the Holland case, Mr. Thomas then filed what happened to be his third collateral attack motion, it was under our Civil Rule 6.02 and raised this Holland case and what the Kentucky Court of Appeals, the Kentucky Court of Appeals which had the last word on it said, look, you should have raised it in your first 11.42, you didn't raise it, our State Supreme Court said we are not going to apply this retroactively and you also can't raise it in the way that you raised it under Rule 6.02 because that's an improper thing. So it never discussed the merits, it was enforcing the default. So in other words, he doesn't raise an argument that was invalid at the time. Yes. And then the Kentucky Court of Appeals later says you should have raised that invalid argument at that time. That's correct. Now, why isn't the invalidity of the argument under extant Kentucky law when he files the 11.42, why isn't the fact that it was futile, why isn't that cause? Because he did not present it and the Engle case which I cited. I know, but that's cause, that's the reason why, because it was invalid, patently invalid under Kentucky law apparently. Well, but Engle says that even if the state courts have said this is a bad claim before, you are still required to raise it to the state court. Okay. If you're, I mean if you're looking down the road at trying to bring this federally at some point, you better give the states a shot at it even to reconsider if necessary. Yes, and as, I can't recall if it was that case or the Basley case, but they basically said look, you can, the states can change their position at any time on these sorts of things, so you owe it to them, and that's exactly what happened here. The Kentucky courts changed their mind and said we will start recognizing that. This is really not an issue before us, but does the Engle rule also apply when the petitioner is proceeding pro se? He filed his initial state post conviction motion, he was pro se, eventually he got counsel. He did. In that case, and counsel did file something, it wasn't very much, but something. As far as I know it does, if there's contrary law, I'm not aware of it. Yeah, I'm just curious. So, and I do want to mention, because counsel mentioned this in his brief, the Boykin case, where this court, the Boykin case that he cites in his brief was not a procedural default case. What happened is, this same issue was before the court as to whether or not the ineffective assistance of counsel claim, and the court said in Boykin, this court said, Kentucky, it's non-cognizable in Kentucky, but it's cognizable in federal court and we're going to hear it. If reading that Boykin opinion, it says nothing about procedural default. I have satisfied myself from internal records that the state never asserted a procedural default in that case. Yeah, the state court itself never applied a procedural bar. Well, I mean, in Boykin, the claim of procedural default was never made in the habeas petition. So that's why when you read that Boykin case, it doesn't say anything about a procedural default, it just says, Kentucky courts don't recognize it, but we can recognize it. The state court itself had not applied a procedural bar for whatever reason in that case. So we didn't have an adequate and independent, I don't know if we're in that zone. But anyway, it wasn't a procedural default issue before this court, is my point. I will point out that there is a non-published case that has come out recently called Halverson, fairly recently, and it's on all fours with the facts in this case on that issue. And it applied, it did say that it would recognize that as cause. However, it relied on Boykin, and Boykin, as I said, is not a procedural default case. And neither Boykin nor Halverson cite to Engle or Bousley or that whole line of cases about perceived futility. I don't have Engle in front of me, so I don't know if there's a way that Mr. Thomas can sort of wiggle past that, but I mean, doesn't it seem just enormously unfair to say that a pro se litigant cannot make a substantial constitutional argument in federal court because he didn't make in state court, as a pro se litigant, an argument that at the time was clearly invalid under state law? I mean, that's pretty harsh, isn't it? Well, he was appointed counsel in state court in his first state collateral attack. 11.42? Yes, sir. Yes, Judge. Okay. So I think that obviates some of that concern. All right. But he wasn't pro se at the time of the filing that matters here, is what you're saying? He was pro se when he filed his subsequent state collateral attacks, and of course pro se before the district court here. I mean, was he, you're saying he's procedurally defaulted because he did not make this argument in his 11.42? Yes, Judge. Was he represented by counsel when he failed to make that argument? Yes. He was? He was. All right. He initially filed pro se, and then was appointed counsel who supplemented the memo. Okay, thanks. That's helpful to understand what happened. And I want to address the ineffective assistance of counsel claim first by looking, of course, with Strickland, the two prongs are performance and then prejudice. But if you get that far past the other default issues I've talked about, counsel could not have performed the mission of failure to anticipate a change in Kentucky law, or well, no change in Kentucky law, excuse me. In other words, Kentucky has long recognized these combination verdicts. They've been somewhat critical, but they've allowed them. In 2008, just two years after Mr. Thomas' direct appeal affirmance, the Kentucky Supreme Court held in the Benjamin case that this did not violate due process. So that we know for a fact, as well as we can, that counsel could not have won that case, could not have won that argument. And more than that, this court, and I've cited a couple cases in my brief, that said an attorney normally doesn't have to anticipate changes in the law. That's not bad performance. Here there was not only not a change in law, there was actually law that said you lose.  So I guess, I mean, this is like kaleidoscopic. It is. It is. So in order to prevail, Mr. Thomas has to show not only that he's right on the merits, but also he has to show cause and prejudice, set that aside. But then he has to show that his lawyer was constitutionally deficient for failing to make this meritorious argument, in his view. And you're saying it wasn't deficient performance because at the time in the Kentucky courts, the law was pretty clearly against this argument. Yes. So maybe it's right in the end, but you can't say the guy was totally deficient because it looked like a loser and you have to make choices on appeal. Exactly. Exactly. And I've cited at least one case to the court where there had actually been, it's an apprendee issue, in Ohio where some of the state courts and divisions had been applying this apprendee doctrine to some of their sentencing law, but others had not, and this court said even though their counsel was not charged with being deficient performance, performing deficient efficiently, because the state Supreme Court had not yet put its impertor on that. So that's a pretty high bar, even where some states are ruling that way, but the state Supreme Court hasn't yet gotten there. The state Supreme Court, though, isn't the final word on a United States constitutional claim, and they argue it violates the due process clause of the U.S. Constitution, and the fact that Kentucky Supreme Court says it does not, that's not dispositive, is it? It's dispositive as to whether or not counsel was ineffective in failing to make that argument in the Supreme Court. If he should have known that the federal courts would have ruled differently, then he's got to make the argument, right, even though you have a ruling by the Kentucky Supreme Court? That's, that's arguable, but to preserve it, I certainly would have. I think that's probably what they argue, but. But as far as I know, I have not seen any case law that counsel has cited, or I have found that specifically. I mean, he's argued this Chad case, and he says if you really see the rationale there, the historical basis isn't here that you had there, or whatever, I mean, you know, I guess that's what he hangs his hat on. Well, and they, and I will just, I see that my time's out. I will just say that most of those cases that counsel has relied upon, including the Terry versus Potter case and some of the state cases, rely on double jeopardy issues. It's where there has been a verdict that says you can find guilty of intentional murder, or you can find guilty of wanton murder, and then they pick one, and you can't go back on retrial when an appellate court says there is insufficient evidence of wanton conduct. You can't go back and retry him on that count. You can only do it on one of the counts, the intent. But here, we don't have that. They weren't split. It was just one general verdict. Okay. Thank you. Thank you. Appreciate your argument. Lan? I'd like to correct a couple of things and make clear the procedural issue before we proceed to the merits. Why doesn't Engle apply? Engle doesn't apply because this court's decision under Boykin squarely forecloses that argument here. There just wasn't, unless I'm misremembering, there was not a, the state court had not found a procedural bar there. So our court just sort of elided the issue altogether rather than decided anything on this point. First of all, Boykin did say very explicitly what the state Supreme, what the state court of appeals in deciding that issue had said was you can't have that kind of claim in our court, we don't recognize that kind of claim. That is exactly what the Kentucky court of appeals did with respect to the third state post-conviction motion here. It didn't say, oh, well, you had to raise it in your first claim, you're out of luck. It said, Holland provides relief, but it only provides relief prospectively, not retroactively. You would have had to raise this claim in your first. Everything about your collateral attack is long past and you can't resurrect it at this time on the basis of Holland. Okay. Assume Boykin doesn't exist. I mean, you know, just, I'm not, I have to go back and read Boykin. But if Boykin weren't there, why, in your view, is Engel not applicable, the reasoning to this case and specifically your client's failure to make this argument in his 11.42 motion? Even before anything about procedural default comes into play, the only condition for a petitioner having to raise a claim before state court is that they have provided a forum for relief. Here, Kentucky did not provide a forum for relief for a claim of ineffective assistance of appellate counsel where the Supreme Court had already recognized that federal right. As this court said in Boykin, that's in direct conflict. Just hang on. So you're saying there's no forum for relief because at that time the claim was invalid, so there's no forum? Correct. What case would you cite in support of the idea that there's no forum for Engel purposes simply because the forum would reject the claim? I would cite Boykin and I would cite this court's decision in Halverson, which just a. Do you have any Supreme Court authority for that? Other than the. I mean, let's say I'm not persuaded by. The Supreme Court said if there's not a forum for relief, you don't have to, I don't have a. I mean, usually just because a forum rejects your argument doesn't mean you don't have a forum. And I'm concerned, I mean, I think Engel's a problem for you and I'm really trying to just, I want you to tell me why it's not. Boykin is not the answer necessarily. Let's assume Boykin's not there. In Engel, the defaulted claim there was simply a trial objection that wasn't raised at trial about the self-defense instruction there. That is a low-cost objection that obviously counsel should be required to present to the state court at some point for it to adjudicate. That is different than a claim sorting rule, which is what Kentucky effectively created here when it said, sorry, this type of claim, we just don't consider this type of claim. Not because of some way that you have to present it and following our procedures, we just don't consider this type of claim. That's not procedural default in ordinary terms. That's not a way of presenting a claim that wasn't followed here. And it would be particularly unfair in Mr. Thomas' case where he has given the state a full and fair opportunity to consider it, and it did in his third state post-conviction motion and said you don't get relief because Holland's only perspective. It also would be doubly unfair because Holland itself relied on this court's decision in Boykin when it made the decision only to look at those claims prospectively. It said we decided that this is fine to do so only prospectively precisely because federal habeas is available under Boykin. So it would be particularly unfair in this case to use that as a reason for not considering this case on the merits and the ineffective assistance of appellate counsel claim follows straightforwardly from the merits. As the Supreme Court noted in Smith v. Robbins, the failure to raise an issue on appeal comes down to that it was clearly stronger than the issues that were raised. That's the case here. Okay. Thank you, Mr. Lamb. Your time has expired. I'd like to thank both of you, Mr. Shackelford and you, Mr. Lamb, for your arguments today. And Mr. Lamb, we would like to thank you for taking this case under the Criminal Justice Act. That's a real service to the system at large and to your client specifically, and we appreciate it. Thank you both for your arguments. The case will be submitted and you may call the final case.